| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 4:08-CR-54 |
| | § | |
| EDGAR EVANS | § | |

**MEMORANDUM AND ORDER**

Pending before the court are Defendant Edgar Evans's ("Evans") *pro se* Motion to Appoint Counsel (#49) and Motion for Sentence Reduction (#50) pursuant to 18 U.S.C. § 3582(c)(1)(A), wherein Evans seeks a reduction of his sentence to time served due to the threat of Coronavirus Disease 2019 ("COVID-19"). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny the motion. Having considered the motion, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.  Background

On March 12, 2008, the Grand Jury for the Eastern District of Texas, Sherman Division, returned a four-count Indictment against Evans. He was charged in Counts 1, 2, and 4 with Distribution of Sexually Explicit Visual Depictions of Minors, in violation of 18 U.S.C. § 2252(a)(2), and in Count 3 with Possession of Sexually Explicit Visual Depiction of Minors, in violation of 18 U.S.C. § 2252(a)(4). On October 28, 2008, Evans pleaded guilty pursuant to a non-binding plea agreement to Count 1 of the Indictment. In the Statement of Facts in support of the Plea Agreement, Evans admitted to distributing visual depictions of minors engaged in sexually explicit conduct on January 29, 2007, June 14, 2007, and April 14, 2007. Evans also admitted to receiving and distributing child pornography that was transported through his computer via the

Internet, some of which featured prepubescent children involved in sadistic or masochistic conduct and/or other depictions of violence. Further, Evans agreed that he was responsible for possessing at least 10, but less than 150, visual depictions of minors engaging in sexually explicit conduct. There was also evidence, however, that he had possessed and/or distributed at least 550 sexually explicit images of children that had been deleted from his computer. On February 9, 2009, the court sentenced Evans to 346 months' imprisonment, to run concurrently with Evans's sentence for Promotion of Child Pornography in Boone County, Missouri, followed by a 5-year term of supervised release. Evans is currently housed at Federal Correctional Institution Beaumont Low, located in Beaumont, Texas ("FCI Beaumont Low"). Evans's projected release date is September 4, 2033.

II.   Analysis

　　A.   Appointment of Attorney for Post-Conviction Proceedings

Evans requests the appointment of counsel to assist him in filing a motion for compassionate release under 18 U.S.C. § 3582(c). There is no constitutional right to appointed counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."); *see Garza v. Idaho*, ___ U.S. ___, 139 S. Ct. 738, 749 (2019); *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991); *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1172 (2018); *In re Sepulvado*, 707 F.3d 550, 554 (5th Cir.), *cert. denied*, 571 U.S. 952 (2013). Specifically, the Supreme Court of the United States has stated:

> Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals. We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct

> review of his conviction, *a fortiori*, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process.

*Finley*, 481 U.S. at 555 (internal citations omitted).

The court may, however, in the interest of justice, appoint counsel to assist a defendant in the pursuit of post-conviction relief where a defendant has raised nonfrivolous claims with factually and/or legally complex issues. *See United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) ("After [a defendant's first appeal], the decision whether to appoint counsel rests in the discretion of the district court.").

> The exercise of discretion in this area is guided . . . by certain basic principles. When applying this standard and exercising its discretion in this field, the court should determine both whether the petition presents significant legal issues, and if the appointment of counsel will benefit the petitioner and the court in addressing this claim.

*United States v. Molina-Flores*, No. 3:16-CR-130-N (19), 2018 WL 10050316, at *2 (N.D. Tex. Feb. 13, 2018) (quoting *Jackson v. Coleman*, No. 3:11-cv-1837, 2012 WL 4504485, at *4 (M.D. Pa. Oct. 2, 2012)); *see Scoggins v. MacEachern*, No. 04-10814-PBS, 2010 WL 3169416, at *1 (D. Mass. Aug. 10, 2010) ("In order to obtain appointed counsel, 'an indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel.' The rare cases warranting appointment of counsel in the interests of justice typically involve nonfrivolous claims with factually and/or legally complex issues and a petitioner who is severely hampered in his ability to investigate the facts." (quoting *Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986))).

Evans is not entitled to the appointment of counsel to assist him with seeking compassionate release under 18 U.S.C. § 3582. *See Finley*, 481 U.S. at 555; *Whitebird*, 55 F.3d

at 1010-11 (declining to recognize constitutional or statutory right to assistance of counsel in bringing § 3582(c)(2) motion for sentence reduction); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("There is no right to counsel in § 3582 or other post-appellate criminal proceedings."). Moreover, Evans provides no basis for the court to conclude that the appointment of counsel would help him obtain relief. A motion "for compassionate release is not particularly complex factually or legally." *United States v. Drayton*, No. 10-200018, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020); *see United States v. Wilfred*, No. 07-351, 2020 WL 4698993, at *1 (E.D. La. Aug. 13, 2020). His Presentence Investigation Report ("PSR") reveals that Evans was born in California, was raised in Oklahoma, and has resided in Texas since his early 20's. He is a high school graduate, has worked as a welder, safety inspector, and quality control specialist, and he has owned his own business. In any event, Evans has failed to raise any potentially viable claims or any factually or legally complex issues that could arguably justify the appointment of post-conviction counsel. Evans is 64 years old and there is no indication that he is seriously ill, disabled, or otherwise a candidate for compassionate release. Thus, the court finds that the discretionary appointment of counsel is not warranted. *See* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain circumstances when "the court determines that the interests of justice so require"). Accordingly, Evans's motion for appointment of counsel is denied.

    B.    <u>Compassionate Release</u>

        1.    Exhaustion

On December 21, 2018, President Trump signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18

U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion

requirement. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court. Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, Evans complied with the exhaustion requirement before filing the instant motion. Probation's investigation reveals that on July 3, 2020, Evans filed his request for compassionate

release with the warden where he is housed. Additionally, Probation notes that on July 4, 2020, Warden F. J. Garrido denied Evans's request because Evans did not meet the criteria for compassionate release. Probation's investigation further revealed that on July 16, 2020, Sreedhar Polavarapu, M.D., evaluated Evans and advised that he has no justifiable medical conditions that would qualify him for compassionate release. Dr. Polavarapu further noted that due to Evans's healthy status, if he were to contract the COVID-19 virus, he still did not have any higher risk for morbidity/mortality compared to other inmates within his same age group. Although Evans complied with the exhaustion requirement, nothing in his motion indicates that extraordinary and compelling reasons exist to reduce his sentence.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18

U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

### 2. "Other Reasons" for Release

As grounds for relief set forth in his motion, Evans does not claim that he has a serious medical condition or that his family has specific needs for a caregiver. Instead, Evans contends that "other" extraordinary and compelling reasons exist that warrant his early release from prison due to the conditions created by COVID-19. In support of his position, Evans asserts that he has "been infected with this virus in the living quarters and faces an uncertain future as related to his his health." Additionally, Evans contends that the following are compelling reasons to reduce his sentence: "he pleaded guilty and accepted responsibility for his actions in this case never expecting to receive a 346-month sentence," "he has had not a single . . . violation in more than ten years in prison," and "he has also completed multiple programs offered by the Bureau aimed at reducing recidivism and maximizing the success of reentry."

The catch-all category of "other" extraordinary and compelling reasons specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

8

extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief."). In this instance, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Evans for any "other" reason. In exercising its discretion, the court, likewise, finds that no extraordinary and compelling reasons exist in relation to Evans's situation.

      According to Evans's PSR, he received a three-point reduction in the calculation of his sentence for acceptance of responsibility, which resulted in a total offense level of 39. Thus, his assertion that he accepted responsibility cannot constitute an "other" reason for a reduction of his sentence at this time because Evans already received the benefit of such acceptance. Evans also cannot be surprised that he was sentenced to 346 months' imprisonment, as the notice of penalty attached to the Indictment cited a penalty range of 15 to 40 years' imprisonment, and the PSR

9

recommended a sentence of 365 months' imprisonment. Further, Evans maintains that his post-sentence rehabilitation and good conduct in prison, evidenced by a list of courses and programs he has completed, establish extraordinary and compelling reasons for early release. While the court may consider rehabilitation efforts, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3; *accord* 28 U.S.C. § 994(t); *see United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *accord United States v. Hudec,* No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."). Although the court finds Evans's list of accomplishments to be commendable, his post-sentence conduct is insufficient to support a sentence reduction.

Evans expresses concerns regarding the spread of COVID-19 among the prison population. Nevertheless, as of January 12, 2021, the figures available at www.bop.gov list 29 inmates (out of a total inmate population of 1,660) and 2 staff members at FCI Beaumont Low as having confirmed positive cases of COVID-19, 1,136 inmates and 4 staff members who have recovered, and 1 inmate who has succumbed to the disease. Indeed, according to Probation, Evans's medical records reflect he tested positive for the disease, was placed in isolation, and has now recovered

from the virus. Thus, it appears that the facility where Evans is housed is handling the outbreak appropriately and providing adequate medical care.

Moreover, courts have repeatedly denied COVID-19-based motions for compassionate release filed by inmates who have already contracted and recovered from the virus. *See*, *e.g.*, *United States v. Stockman*, No. H-17-116-2, 2020 WL 5269756, at *3 (S.D. Tex. Aug. 26, 2020) (noting that when an inmate is infected and recovers from COVID-19, the courts have found the risks of infection or severe symptoms or effects because of underlying conditions change and diminish); *United States v. Baker*, No. CR 16-179, 2020 WL 4584195, at *4 (E.D. La. Aug. 10, 2020) ("Courts have denied COVID-19-based motions for compassionate release filed by inmates who have already contracted the virus."); *United States v. Neal*, No. CR 11-28, 2020 WL 4334792, at *1 (E.D. La. July 28, 2020) ("Courts have repeatedly found that defendants who contract COVID-19 and recover are not among those who fall within the guidelines or demonstrate 'extraordinary and compelling reasons,' meriting a reduction in their sentence."); *United States v. Gallegos*, No. 4:17-CR-568, 2020 WL 3403032, at *3 (S.D. Tex. June 19, 2020) ("Having already contracted and fully recovered from COVID-19, the Court cannot say that Defendant's asthma 'substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility.'" (quoting U.S.S.G. § 1B1.13)).

The remainder of Evans's arguments are nothing more than an attempt to revisit determinations made years ago at the time of his sentencing in February 9, 2009. On February 17, 2009, Evans's court-appointed counsel, at the direction of Evans, filed an appeal with the United States Court of Appeals for the Fifth Circuit challenging his conviction and sentence. On December 15, 2009, the Fifth Circuit dismissed Evans's appeal as frivolous, rendering his

11

conviction and sentence final. Evans has not sought habeas corpus relief, and the time for doing so has expired. "The principle of finality . . . is essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989). Recognizing the importance of finality, Justice Harlan stated in his concurring opinion in *Mackey v. United States*:

> No one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing that a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation.

401 U.S. 667, 691 (1971). This principle of finality forecloses Evans's current endeavor to circumvent the limitations on post-conviction relief by challenging determinations made at sentencing under the guise of a compassionate release motion. In short, Evans has not presented any "other reasons" establishing extraordinary and compelling reasons meriting a reduction of his sentence.

The court further finds that a sentence reduction is not warranted in light of the applicable factors set forth in § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020)("[C]ompassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)."). The nature and circumstances of Evans's offense of conviction entail his possession and distribution via his computer of between 15-150 depictions of children engaging in sexually explicit activity. Some of the depictions featured prepubescent children and portrayed sadistic or masochistic conduct and other depictions of violence. Evans also engaged in graphic chat room conversations with undercover officers posing as minors.

In fact, as set forth in Evans's PSR, he engaged in a pattern of activity involving the sexual abuse and/or exploitation of minors over a period of years. In May 2007, Evans contacted an individual via an online chat room, whom he believed to be a 13-year old girl ("T.W."), but was actually an undercover agent. Evans questioned T.W. about her sexual experiences to which T.W. answered that her mom's ex-boyfriend had touched her breasts and that she would be willing to have sex with another man, if her mom got a new boyfriend. Evans replied to T.W.'s reponses by stating that he was her mom's new boyfriend and suggested they have sex. Evans also confided in T.W. that he used to "do" his stepdaughter when she was 12 years old. Evans also mentioned to T.W. that he was viewing pictures of girls as they conversed. During other chat sessions with an undercover agent posing as a different minor, Evans encouraged the minor to masturbate and asked her to touch her nipples for him. Evans also proposed meeting the minor and her mother for the purpose of engaging in sexual activity.

Evans's criminal history includes prior convictions for indecency with a child and sexual assault of a child in 1994, both involving his stepdaughter, and two convictions for promoting child pornography in 2007. As reflected in his PSR, Evans explicitly acknowledged to Probation that he has a sexual deviancy problem. Evans also has a history of substance abuse. Under the circumstances, the court cannot conclude that Evans would not pose a danger to the safety of any other person or to the community, if released from prison at this juncture.

In addition, granting Evans compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the United States Court of Appeals for the Fifth Circuit found that the district court did not abuse its discretion in denying compassionate release to a defendant due to the defendant's not yet having served a significant

13

portion of his sentence.  *Id.* at 694.  The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense."  *Id.* at 693-94.  "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'"  *Id*.  In the instant case, releasing Evans after he has served only approximately 41% of his sentence, would similarly minimize the impact of his crime and the seriousness of his offense.  In sum, Evans has failed to satisfy his burden of showing the necessary circumstances to warrant a sentence reduction under the statutory framework to which the court must adhere.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19.  In response to a directive from the former United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement.  *See United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *3 (W.D. La. Apr. 20, 2020).  The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff.  Since March 26, 2020, the BOP has placed 20,125 inmates on home confinement.  The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving

14

their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020). The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement. 18 U.S.C. § 3621(b); *United States v. Donnell*, ___ F. Supp. 3d ___, No. 4:10-CR-65-SDJ-CAN, 2020 WL 5939095, at *7 (E.D. Tex. Aug. 4, 2020); *Ambriz v. United States*, 465 F. Supp. 3d 630, 633 (N.D. Tex. 2020); *United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, former Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor

one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Evans's track record is similarly a poor one. There is no reason to believe that Evans would not revert to his acts of sexual deviancy, if released from prison at this time.

In short, Evans has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

III.   Conclusion

In accordance with the foregoing analysis, Evans's *pro se* Motion to Appoint Counsel (#49) and Motion for Sentence Reduction (#50) are DENIED.

SIGNED at Beaumont, Texas, this 12th day of January, 2021.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE